UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONNA H.,[1]

    Plaintiff,

v.

Case No. 3:20-cv-00426
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Donna H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 4, on *Plaintiff's Statement of Errors*, ECF No. 14, *Defendant's Memorandum in Opposition*, ECF No. 15, *Plaintiff's Reply*, ECF No. 16, and the *Certified Administrative Record*, ECF No. 10. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income in September 2017, alleging that she has been disabled since April 1, 2017, based on a number of physical and mental impairments. R. 260-66, 267-75.[3] The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 145-46. Administrative Law Judge ("ALJ") Kevin Plunkett held a hearing on November 8, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39-68.[4] In a decision dated December 3, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from April 1, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 15-33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 16, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v.*

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."
[4] An administrative hearing was first held on May 7, 2019, but was apparently continued as a result of technical problems and because Plaintiff's former representative did not appear. *See* R. 69-72.

*Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 48 years old on April 1, 2017, her alleged disability onset date. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 32.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: a stroke, hypertension, obesity, depression, and anxiety. R. 18. The ALJ also found that Plaintiff's history of coronary artery disease and heart disease, high cholesterol, knee osteoarthritis, gastroesophageal reflux disease ("GERD"), mild speech and language impairment, and glaucoma with loss of visual acuity were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting and carrying twenty pounds occasionally and ten pounds frequently. She is able to sit, stand, and walk for six

> hours each in an eight-hour workday, and she is able to push and pull as much as she is able to lift and carry. The claimant is limited to no climbing of ladders, ropes, or scaffolds with occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. The claimant is limited to no work at unprotected heights or around moving mechanical parts, and she should never operate a motor vehicle for commercial purposes. The claimant is able to perform simple, routine tasks and make simple, work-related decisions.

R. 23. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a laundry sorter as actually and generally performed. R. 31.

The ALJ also proceeded to step five and, relying on the testimony of the vocational expert, alternatively found that a significant number of jobs—*e.g.*, jobs as housekeeping cleaner, cleaner/polisher, and order caller—existed in the national economy and could be performed by Plaintiff. *Id*. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 1, 2017, her alleged disability onset date, through the date of the decision. R. 32.

Plaintiff disagrees with the ALJ's findings at step two, arguing that the ALJ erred in failing to find a severe upper extremity, back, or knee impairment, and with the ALJ's findings at step four, arguing that the ALJ erred by failing to incorporate corresponding limitations into the RFC determination. Plaintiff also complains that the ALJ erred in failing to consider a closed period of disability. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 15.

IV.   **RELEVANT EVIDENCE AND DISCUSSION**

As noted above, Plaintiff complains that the ALJ erred in failing to find severe upper extremity, back, or knee impairments and that the ALJ erred in failing to include corresponding limitations in Plaintiff's RFC. Plaintiff testified at the administrative hearing that she suffered a stroke in April 2017. R. 45. In May 2018, she returned to part-time work, for approximately 25 hours per week, as a dish washer in a fast-food restaurant. *Id*. She stands "all day" at that job and uses the restroom twice per hour to get a break. R. 47-48. She misses work when she does not feel well. R. 48.

Plaintiff's stroke affected her right side. R. 50. Since that time, Plaintiff cannot lift as much weight as she could formerly; she lifts no more than 10 pounds at work. R. 48. She can stand for "[p]robably an hour or two" before having to sit down or change position. R. 50. She leans on the sink when she washes dishes; "as far as standing up and washing, I don't do that. It's too much." *Id*. Plaintiff also complained of difficulty using her hands: "They go numb, and there's a lot of tingling" when they get cold. R. 56. "[S]ome days they just fight me on whatever I'm trying to do." R. 56. She has been told by her doctors that she has carpal tunnel syndrome, R. 55, although that diagnosis has not been confirmed by an EMG, R. 45. Wrist splints did not help, however, and no further treatment has been suggested. *Id*.

Plaintiff testified that she has suffered back pain for years, although she has never been diagnosed with a back impairment. R. 51. She has undergone physical therapy but "nothing seems to help." *Id*. Tylenol has been provided but she does not take it because it does not help; recommended exercise does not help. R. 51-52.

Although the record contains extensive medical treatment, only two opinions from medical sources appear. Linda Hall, M.D., reviewed the record in December 2017 on behalf of

the state agency and opined that, because of her stroke, obesity, and "[d]iffuse arthralgias, especially knees," R. 83, Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently, could stand and/or walk for four hours, and could sit for about six during an eight-hour workday. R. 81. She could occasionally climb ramps and stairs, and crawl. R. 81-82. She could never climb ladders, ropes, or scaffolds but could frequently balance, stoop, kneel, and crouch. *Id.* She was unlimited in her ability to push and/or pull and to operate hand and foot controls, and had no limitations in her ability to manipulate, R. 81-82, but should avoid even moderate exposure to hazards. *Id*. Dr. Hall explained that she based her opinions on the record, including Plaintiff's physical therapy records, which reflected a normal gait and stride and normal strength throughout. R. 82. She was able to walk on a treadmill for short distances and she reported no difficulty with stairs. *Id.*

In April 2018, Theresa March, D.O., also reviewed the record on reconsideration by the state agency. R. 115-117. Like Dr. Hall, Dr. March opined that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently, and could sit for about six hours in a normal workday. R. 115-16. Unlike Dr. Hall, however, Dr. March opined that Plaintiff could stand and/or walk for about six hours in a normal workday. R. 115-116. Plaintiff was unlimited in her ability to push and/or pull, including in her ability to operate hand and foot controls. R. 116. Plaintiff could frequently climb ramps and stairs, balance, kneel, and crouch and could occasionally crawl, and climb ladders, ropes, and scaffolds. *Id*. She had no manipulative limitations, but should avoid even moderate exposure to hazards. R. 116-17. Dr. March based her opinions on the medical records, which reflected a normal gait/stride, normal strength, no reported difficulty with stairs, only mild imbalance, no tenderness or major joint deformities and good range of motion in all major joints. She explained the differences between her assessment

8

and that of Dr. Hall by pointing to Plaintiff's "improving physical condition" and "new and material [evidence] of improving function." R. 117.

The ALJ evaluated these opinions as follows:

> The opinions of Drs. Linda Hall and Theresa March, non-examining physicians with the Division of Disability Determination (DDD), are mostly persuasive. Drs. Hall and March opined the claimant was limited to a reduced range of light work with mostly occasional to frequent postural activity and no more than moderate exposure to hazards. Dr. Hall, whose opinion was provided while the claimant was still recovering from her stroke, further limited the claimant to standing and/or walking for up to four hours per eight-hour workday. The opinions of Drs. Hall and March are generally supported by and consistent with the evidence they had available for their review. For example, the claimant's generally good strength and steady gait shortly after her stroke indicate an ability to perform light work. Her testimony that she was able to stand one or two hours at a time further supports a reduced range of light work. Accordingly, the record supports and is consistent with the opinions of Drs. Hall and March. Therefore, the undersigned finds their opinions mostly persuasive. The claimant's testimony that she is able to stand one to two hours at a time is more consistent with Dr. March's opinion than Dr. Hall's, making Dr. March's opinion slightly more persuasive.

R. 29-30 (citations to record omitted).

### A. Severe Impairments and RFC

The ALJ found that Plaintiff's severe impairments consist of a stroke, hypertension, obesity, depression, and anxiety. R. 18. Plaintiff alleges that problems with her upper extremity, knee, and back are also severe impairments. The ALJ considered these conditions but found that they were not severe:

> Treatment notes dating to at least October 2012 show complaints of knee pain (e.g. Exhibit 16F/6). Some physical therapy notes reflect complaints of right knee instability and wanting to buckle, though that was not observed by the physical therapist (e.g. Exhibit 6F/3). September 2017 primary care notes show a diagnosis of osteoarthritis, and she was instructed to continue physical therapy (Exhibit 7F/25). January 2018 primary care notes show complaints of chronic right knee pain with no effusion or decreased range of motion (Exhibit 9F/62). She was not taking any medication for pain relief, as she had run out of Tylenol (Exhibit 9F/62). A July 2018 x-ray of the right knee taken after an injury showed arthrosis changes with a large effusion and diffuse synovitis, and she also had a small ossicle laterally (Exhibit 15F/129). Nevertheless, the claimant's physical therapy

9

records throughout the period under review consistently reflect relatively good strength that ranges from 4/5 to 5/5 bilaterally (e.g. Exhibits 4F-6F, 16F). She has not required significant treatment beyond physical therapy, which appears to have been for complaints of back pain and residuals of her stroke as opposed to her knee pain, and Tylenol (Exhibits 1F-16F). Therefore, the claimant's knee osteoarthritis will not significantly limit the claimant's ability to perform basic work-related activities and is non-severe.

\*\*\*

The claimant also has non-medically determinable impairments of carpal tunnel syndrome and back pain. The claimant testified that a physician told her she had carpal tunnel, and she wore wrist splints that did not help. She has not received further treatment. She stated she has some difficulty with her hands where they will go numb or tingle when they get cold. She usually wraps them in a towel to keep warm or keeps the water a little warmer at work. The claimant's treatment notes suggest a history of carpal tunnel syndrome dating to October 2012 (e.g. Exhibit 16F/6). Some of her post-stroke home health care notes reflect complaints of chronic pain in the right wrist from carpal tunnel, but she had strength within functional limits except for the limited movement of the right thumb (e.g. Exhibit 5F/4). March 2018 treatment notes reflect that the claimant was diagnosed with carpal tunnel syndrome, unspecified laterally, after complaining of bilateral wrist pain and hand numbness (Exhibit 9F/21). However, the only abnormality noted on her physical examination was a positive Phalen's sign (Exhibit 9F/21). EMG testing was ordered (Exhibit 9F/21). However, she did not obtain the confirmatory EMG and nerve conduction testing, there is no evidence that the claimant required treatment for her reported carpal tunnel syndrome after the March 2018 primary care visit, there are minimal complaints related to her alleged carpal tunnel syndrome, and most of her other physical examinations had no significant abnormalities suggestive of carpal tunnel syndrome (Exhibits 1F-16). The lack of confirmatory testing demonstrates that her carpal tunnel syndrome is not medically determinable.

The claimant testified that she has back pain that she has had physical therapy for, but nothing seems to help. She has only been given Tylenol, but she does not take it because it does not help. She reported that she has had no diagnosis for her back pain. Her treatment notes do occasionally reflect complaints of back pain dating to at least the therapy following her stroke (e.g. Exhibit 4F/114). She began physical therapy for acute back pain in March 2016 (Exhibit 16F/272). She suggested she fell at least once per month (Exhibit 16F/272). She did not have any prescription for her lower back pain other than a chiropractor, which did not help at the time (Exhibit 16F/272). She suggested she ambulated with a walker at home most of the time but tried to use a cane or no assistive device when able (Exhibit 16F/272). However, she also noted she walks about a mile most days, which takes about an hour (Exhibit 16F/272). July 2018 x-rays of the lumbar spine showed "minimal" lumbar spondylosis with no acute fracture or subluxation (Exhibit

>15F/122). The claimant returned to physical therapy in May 2019 with complaints of bilateral low back pain with occasional pain radiating down the left leg (Exhibit 12F/1). However, the lack of diagnosis by an acceptable medical source, along with her generally unremarkable imaging studies and physical examinations, does not support a medically determinable impairment related to her back pain.

R. 19-21.

At step two of the sequential evaluation process, an ALJ decides whether the claimant has a "severe impairment" or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). The finding of a severe impairment at step two of the sequential analysis is, however, only a threshold determination; where the ALJ has found at least one severe impairment, the sequential evaluation process will continue and the failure to include other severe impairments is not itself reversible error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

An ALJ who has found at least one severe impairment must also assess at step four of the sequential evaluation how much work the claimant can perform in her lessened capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In doing so, "the ALJ must consider limitations and restrictions imposed by all of [the claimant's] impairments, even those that are not severe." *Fisk v. Astrue*, 253 F.App'x 580, 583 (6th Cir. 2007) (cleaned up); *see also* 20 C.F.R. §§ 404.1523, 416.923. Thus, so long as the ALJ considers at step four all of the claimant's impairments in determining the claimant's RFC, the ALJ's failure to find an additional severe impairment at step two of the sequential evaluation does not ordinarily constitute reversible error. *Fisk.* 253 F. App'x at 583 (cleaned up).

The ALJ in the case presently before the Court found at step two of the sequential evaluation that Plaintiff suffers the severe impairments of a stroke, hypertension, obesity,

11

depression, and anxiety. R. 18. The ALJ's failure to find additional severe impairments at step two is therefore "legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008), so long as the ALJ continued the sequential analysis and considered all of Plaintiff's impairments, both severe and non-severe, in determining Plaintiff's RFC. *See id.* In this case, the ALJ recognized his obligation in this regard. R. 20 ("The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."). However, Plaintiff complains that the ALJ's RFC determination was erroneous because he did not adequately consider her upper extremity, back, and knee pain. This Court disagrees.

At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), 416.927(e)(2), 416.946(c). In determining Plaintiff's RFC, the ALJ in this case relied on the opinions of the state agency reviewing consultants, who opined that Plaintiff was able to perform a limited range of light work despite her impairments, which included "[d]iffuse arthralgias, especially knee." R. 83. In evaluating these opinions, the ALJ complied with the applicable regulations, 20 C.F.R. §§ 404.1520c, 416.920c, and specifically found that "the record supports and is consistent with" their opinions. R. 29. *See id.* at §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."), 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

12

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

Plaintiff argues that the ALJ "unreasonably found that [Plaintiff] could sustain a full six hours each of standing, walking, and sitting each workday" without additional upper extremity limitations, including handling and fingering. *Plaintiff's Statement of Errors*, ECF No. 14, PageID# 1866. She also points to evidence in the record that could support her argument. *Id.* at PageID# 1867. Plaintiff accuses the ALJ of "play[ing] doctor and mak[ing] their own independent medical findings." *Id.* at PageID# 1868 (quoting *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)). However, this is a mischaracterization of the ALJ's decision. In crafting Plaintiff's RFC, the ALJ relied on the opinions of the state agency reviewing consultants, who opined that Plaintiff could engage in a limited range of light work, with no limitation in her ability to push, pull, operate hand controls or manipulate. Significantly, Plaintiff points to no medical opinion that Plaintiff has greater limitations than those found by the ALJ. The ALJ also relied on evidence in the record, including evidence that reflected a "relatively good recovery. . . in [Plaintiff's] treatment notes only a few months after her stroke;" out-patient therapy notes that reflected good sitting and standing balance; a September 2017 report that Plaintiff was physically able to move furniture; her October 2017 function report in which she indicated that she could prepare simple meals and attend to simple chores; her report of using steps as she had previously and with no pain; a March 2018 report that she walked about a mile each day with little increase in pain; notes from March 2018 physical therapy for Plaintiff's back that reflected 4+/5 to 5/5 strength in all tested muscle groups of the lower extremities; and reports that she cared for her grandchildren. R. 28-30. The ALJ's RFC finding is unquestionably supported by substantial evidence. The fact that Plaintiff points to evidence in the

13

record that could support a contrary conclusion is unavailing. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Under these circumstances, any failure on the part of the ALJ to include upper extremity, back, and knee impairments among Plaintiff's severe impairments at step two of the sequential evaluation is immaterial.

### B.     Closed Period of Disability

Plaintiff also contends that the ALJ erred in failing to consider a closed period of disability. *Plaintiff's Statement of Errors*, ECF No. 14, PageID# 1868-69. This Court disagrees.

Although Plaintiff does not specify the precise contours of the proposed period of disability, the Court assumes that Plaintiff intends to refer to the period from April 2017, when she suffered her stroke, through May 2018, when she returned to part-time work. A claimant may be found to be disabled within the meaning of the Social Security Act if it is determined that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Although the Social Security Act "itself does not provide for a closed period of benefits. . . it is clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). "[A] 'closed period of disability' necessarily means that while the claimant may not be entitled to disability on a permanent basis, he is entitled to disability for some period not less than 12 months." *Sizemore v. Saul*, No. CV 20-273-DLB, 2021 WL 4432476, at *7 (E.D. Ky. Sept. 27, 2021).

In the case presently before the Court, Plaintiff did not ask that the ALJ consider a closed period of disability. Moreover, as is apparent from the Court's earlier summary of the ALJ's decision finding that Plaintiff was not disabled, the ALJ expressly considered record evidence relating to the entire period from Plaintiff's alleged disability onset date of April 1, 2017, through the date of the administrative decision, December 3, 2019. Further, the state agency reviewing physicians, who reviewed the record during Plaintiff's presume closed period of disability, opined that Plaintiff was not disabled. In short, the Court concludes that Plaintiff's argument in this regard is without merit.

## V.   CONCLUSION

For all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 14, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  November 10, 2022                               *s/Norah McCann King*
                                                                              NORAH McCANN KING
                                                              UNITED STATES MAGISTRATE JUDGE